Kenneth L. SHANKS, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 80A02–9212–CR–593.

Court of Appeals of Indiana, Second District.

Sept. 28, 1994.

Thomas R. Lett, Tipton, for appellant.

Pamela Carter, Atty. Gen., Cynthia L. Ploughe, Indianapolis, for appellee.

SULLIVAN, Judge.

Once again, we must determine whether reversal is required due to the admission of depraved sexual instinct evidence in the wake of *Lannan v. State* (1992) Ind., 600 N.E.2d 1334. This case offers a new twist, however, because the defendant was tried to the court and not to a jury.

The facts most favorable to the trial court's judgment reveal that Shanks has three daughters: J.S., M.S., and L.S. In late 1990 or early 1991, J.S. told a school counselor that Shanks had been molesting her. She reported that he had touched and fondled her breasts on September 8, 1988, and that he had fondled her genitalia in mid-June of 1989.

Shanks was charged with two counts of child molesting for fondling J.S.,[1] both Class D Felonies. At Shanks' bench trial, J.S. testified, over objection, about other, uncharged acts of molestation by Shanks. Shanks' other daughters also testified, over objection, about specific instances of Shanks' molestation of them. The trial court found Shanks guilty of both counts and sentenced him to two three-year terms of imprisonment, to be served concurrently but consecutively to the sentence he had received in a separate proceeding for his conviction for molesting L.S.[2]

---

1. I.C. 35–42–4–3 (Burns Code Ed.1988).

2. The conviction in the separate proceeding was reversed and the sentence set aside in a Memorandum Decision in *Shanks v. State,* 620 N.E.2d 757 (1993).

Evidence of prior bad acts, including acts tending to show a depraved sexual instinct, is inadmissible. *Lannan, supra* at 1339. It is beyond dispute that the evidence of Shanks' uncharged acts of molestation was error.[3] However, where evidentiary error has occurred, reversal is not required if it is apparent that the fact-finder did not rely upon the improper evidence in reaching the verdict. *Pinkston v. State* (1982) Ind., 436 N.E.2d 306, 308. In determining whether the improper evidence was relied upon, the reviewing court should consider the probable impact of the evidence upon the fact-finder. *Lannan, supra,* 600 N.E.2d at 1341. Where the trial is a bench trial, under the proper circumstances, a reviewing court may conclude that the improper evidence did not have significant impact upon the judge and was not relied upon. *Pinkston, supra* at 308. A reviewing court may reach the same conclusion where there was other overwhelming evidence of guilt, regardless of whether the trial was to a judge or a jury. *See Lannan, supra* at 1341.

## I. BENCH TRIAL

When a defendant is tried without a jury, it may be presumed that the judge will disregard inadmissible and irrelevant evidence in determining whether the defendant committed the charged crime. *Pinkston, supra* at 308; *King v. State* (1973) 2d Dist., 155 Ind.App. 361, 292 N.E.2d 843. "[H]arm arising from evidentiary error is lessened if not totally annulled when the trial is by the court sitting without a jury." *King, supra* at 846. The question remains whether we may indulge in this "judicial-temperance" presumption where a *Lannan* error has occurred. We hold that the presumption does not apply in this case because the evidence was used for an improper purpose, the evidence was admissible at the time of trial, and the evidence was admitted over a special objection.

### A. *Improper Purpose*

"Bad acts" evidence is generally inadmissible because it is highly prejudicial and invites the jury to convict the defendant merely because he is a bad person. *Hardin v. State* (1993) Ind., 611 N.E.2d 123, 127. The evidence conveys the impression that the defendant is a "'bad' man who should be punished whether or not" the evidence against him establishes his guilt. *Thompson v. State* (1993) 4th Dist. Ind.App., 612 N.E.2d 1094, 1098, *trans. denied.* We agree with Judge Friedlander's dissent that a judge will not fall prey to this type of prejudice and convict the defendant merely because he is a bad man. "[A] trial judge, unlike a lay jury, can be presumed to retain his impartiality...." *Pier v. State* (1983) 3d Dist. Ind.App., 446 N.E.2d 985, 988 (no reversible error where defendant was tried to trial court in manacles and handcuffs). "It can be presumed that a trial judge is not swayed by evidence which is considered prejudicial before a jury." *Misenheimer v. State* (1978) 268 Ind. 274, 374 N.E.2d 523, 528. If this were the only reason that evidence of depraved sexual instinct is now inadmissible, we might be persuaded that reversal is not required. However, there is another reason that this evidence is inadmissible precluding the operation of the judicial-temperance presumption.

While evidence of prior offenses is admissible for a few specifically enumerated purposes,[4] it is not admissible to show that the defendant had a propensity to commit criminal acts and therefore, committed the charged crime. *Lannan, supra,* 600 N.E.2d at 1339. Prior to *Lannan,* evidence of a depraved sexual instinct was an exception to the propensity rule and was admissible to

---

3. Shanks objected to the evidence at trial based upon the inadmissibility of uncharged crimes. His case was pending on appeal when *Lannan* was decided. It is clear that Shanks has met the requirements of *Pirnat v. State* (1992) Ind., 600 N.E.2d 1342, and *Ried v. State* (1993) Ind., 615 N.E.2d 893. In fact, the State waived the filing of the appellee's brief and stated, "the reviewing court may be constrained to reverse Appellant's convictions...." State's Waiver, ¶ 6.

4. Evidence or prior bad acts is admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. *Lannan, supra* at 1339. "Bad acts" evidence is also admissible to impeach a witness if the prior acts reflect upon credibility or would make the defendant incompetent to testify per statute. *Ashton v. Anderson* (1972) 258 Ind. 51, 279 N.E.2d 210.

" 'connect an accused with a crime....' " *Kerlin v. State* (1970) 255 Ind. 420, 265 N.E.2d 22, 25. We can conclude only that by abolishing the depraved sexual instinct exception, our Supreme Court has held that evidence of a depraved sexual instinct can no longer be used to prove that the defendant committed the crime charged.[5] Like other "bad acts" evidence, evidence of depraved sexual instinct simply is irrelevant to the defendant's guilt or lack thereof. In so holding, we note that our Fourth District has stated that evidence of depraved sexual instinct is "wholly irrelevant, but damaging, inadmissible evidence of prior bad acts." *Moran v. State* (1992) 4th Dist. Ind.App., 604 N.E.2d 1258, *trans. denied.*[6]

■ The evidence was not admitted for any of the permissible purposes. *See supra* note 4. Rather, it was admitted to prove that Shanks acted in conformity with a depraved sexual instinct. In overruling Shanks' objection, the trial judge stated, "I don't think this falls under the common scheme or plan exception. However it will be admitted under the depraved sexual in-

stinct exception." Record at 66. Where evidence is inadmissible simply because it will inflame the prejudice of the jury, it is appropriate to presume a judge will not likewise be affected. However, where evidence is admitted expressly for a prohibited purpose, we cannot presume the judge did not consider it for the impermissible purpose.

### B.  *Admissible at Trial*

■ The judicial-temperance presumption is also inapplicable in this case because the contested evidence was admissible at the time of trial. In most cases employing the presumption, the evidence is inadmissible, but comes in anyway, usually because no objection is posed.[7] Where inadmissible evidence comes in without intervention of the judge, he or she may be presumed to know that the evidence is in-fact inadmissible and should be disregarded. However, there is no reason to presume the judge would disregard evidence that was admissible at the time and, therefore, presumably relevant. As Judge Friedlander states, quoting *King, supra,* 292

---

5. We note that in *Lannan,* the court analogized proof of prior sexual crimes with evidence of prior drug-related crimes. The court went on to hold that although "it can hardly be disputed that such evidence would be highly probative ... the prejudicial effect of such evidence outweighs any probative value." 600 N.E.2d at 1337. The court stated that this was the reason for overturning the rule. We admit that this tends to cast doubt upon our interpretation of *Lannan* that prior sex crimes are not relevant to the determination of the defendant's guilt. The waters are muddied by the Supreme Court's holding in *Hardin, supra,* in which the court cites *Lannan* as holding that "a trial court may exclude even relevant evidence at trial, due to possible prejudicial effect that outweighs the probative value of the evidence." 611 N.E.2d at 127. However, *Lannan* also holds that "such evidence will no longer be admitted to show action in conformity with a particular character trait." 600 N.E.2d at 1339. Absent further guidance from the Supreme Court, we remain of the view that evidence of prior sexual crimes does not tend to prove that the defendant committed the charged crime.

6. *Moran* is not squarely on point because although the *Lannan* error occurred in a bench trial, the trial judge explicitly stated that he relied upon the evidence. *Id.* at 1263.

Although we agree with the holding in *Moran,* we note our concern that the court's decision was influenced by an improper weighing of the

evidence. The *Moran* court's opening words are, "A month after Roy Thomas Moran (Tom), age 39, grounded his then eleven year old daughter, she complained to school officials that he—about four years previously while she was visiting him—had sexually touched her while she was showering." *Id.* at 1259. In its facts, the court reiterates this point by stating, "[D]uring the 1989 Christmas holiday, the victim was 'grounded' by Tom as discipline. The next month she complained to school officials that Tom had molested her." *Id.* at 1260.

From these passages and others, the reader is left with the clear impression that the Fourth District did not believe the victim's allegations. However, it is not for a reviewing tribunal to weigh the facts and judge the credibility of witnesses. *Barger v. State* (1992) Ind., 587 N.E.2d 1304, *aff'd.,* 991 F.2d 394 (7th Cir.1993).

7. If a party fails to object, in most cases the judge has little choice but to admit the evidence. It would be unfair to hold that he was prejudiced by the evidence, when he or she had no control over its admission. Otherwise, counsel could sit idly by, letting inadmissible evidence come in, and then claim reversible error because the evidence prejudiced the trial court. Of course, in practice the foregoing argument is largely hypothetical as error in usually waived where a party fails to object. *See* Section C, *infra.*

N.E.2d at 846–47, the basis for the presumption is that the judge knows the "intricacies and refinements of the rules of evidence . . . [and] is thus able to separate the wheat from the chaff. . . ." Dissenting slip. op. at 5. But where those rules change *after* the trial, we cannot honestly suppose that the judge applied the correct, albeit non-existent, rule. Accordingly, we hold that where heretofore admissible evidence becomes inadmissible, the presumption does not apply.

### C. *Specific Objection*

■ Finally, the judicial-temperance presumption is inapplicable because the evidence was admitted over a specific objection. The dissent relies upon *King, supra,* to apply the presumption thus affirming the conviction. Although the citation is understandable due to the widespread misuse of *King,* the reliance is misplaced. *King,* which is a review of a general objection to an evidentiary harpoon,[8] was decided in 1973. Three years later, our Supreme Court limited *King* to its facts, holding that the judicial-temperance presumption only applies where the contested evidence is admitted over a general objection, and cannot be used where the defendant has made a specific objection.[9] *Fletcher v. State* (1976) 264 Ind. 132, 340 N.E.2d 771. Where a judge has overruled a specific objection, it clear that the judge believes the evidence to be admissible and relevant. Accordingly, it defies logic to presume that he did not rely upon the evidence in reaching his determination as to guilt. In *Fletcher,* the defendant made a specific objection to evidence of a prior conviction for purposes of impeachment based upon the *Ashton* rule.[10] 340 N.E.2d at 773. Our Supreme Court stated, "It is a curious ratiocinative process

which presumes that the trial court will disregard that which it holds admissible over specific objection." *Id.*

The upshot of *Fletcher,* then, is that the judicial-temperance presumption is limited to situations in which there has been no objection at all or merely a general objection. However, "a general objection without stating grounds therefor, preserves nothing for appeal and will not be reviewed." *Johnson v. State* (1978) 2d Dist., 177 Ind.App. 501, 380 N.E.2d 566, 569. Nevertheless, where the evidence itself plainly discloses the basis for the objection, a reviewing court may reach the merits of a general objection. *King, supra,* 292 N.E.2d at 845.[11] While *King* and its progeny have been the basis for virtually every decision in which the presumption has been applied, only one case has ever mentioned the *Fletcher* limitation. *See Altman v. State* (1984) Ind., 466 N.E.2d 716, 719. This leads to the inescapable conclusion that most cases resorting to the presumption improperly have applied it to evidence admitted over specific objection. In fact, this court stated, "In a trial to the court, the admission of incompetent evidence *over objection* will not ordinarily be a ground for reversal. . . . The judge will be presumed to have disregarded the inadmissible and relied on the competent." *Johnson, supra* (no reversal where evidence was admitted without proper foundation) (emphasis added); *Nelson v. State* (1982) 4th Dist. Ind.App., 436 N.E.2d 1153, 1157 (quoting *Johnson, supra* for the proposition that evidence of prior uncharged crimes did not warrant reversal).

Although largely ignored, the *Fletcher* limitation remains viable. As recently as 1984, our Supreme Court relied upon *Fletcher* in stating that "under other circumstances we

---

8. The prosecutor asked a police officer witness whether he knew the defendant, to which the officer replied, "Yes we had arrested him approximately ten days before that." 292 N.E.2d at 845.

9. It is not necessary to resort to the presumption where the trial judge admits the evidence but specifically states that he did not rely upon the evidence in reaching his decision. *Hammond v. State* (1985) 2d Dist. Ind.App., 479 N.E.2d 629, 631.

10. Under *Ashton, supra,* 279 N.E.2d at 216–17, prior convictions may be used to impeach a witness only if they involve dishonesty or would have rendered a witness incompetent by statute.

11. In *King,* the extent of the defendant's objection was "Objection, Your Honor." 292 N.E.2d at 845. This district held that any error was not properly preserved, but then stated, "the evidence itself plainly discloses the basis for objection, [and] we deem it not wholly inappropriate to comment upon King's contentions." *Id.* at 845–46.

might be hard pressed to say that [the evidence] was disregarded by the trial judge" as it "was admitted over specific objection." *Altman, supra,* 466 N.E.2d at 719 (reversal not required because trial judge indicated that he did not rely upon the contested evidence and in fact found the defendant not guilty on the count supported by the evidence).[12] We recognize that the consequence of *Fletcher* is a virtual abolition of the judicial-temperance presumption. To say that a reviewing court may resort to the presumption when the defendant makes a general objection is almost illusory in practice because most general objections will be considered waived. Be that as it may, *Fletcher* is controlling.[13] Perhaps the judicial temperance premise should be discarded completely as unnecessary where applicable and, as otherwise applied wholly illogical.

## II. OTHER OVERWHELMING EVIDENCE

An alternative ground for concluding that a trier of fact did not rely upon the inadmissible evidence is that there is other overwhelming evidence of guilt. *Lannan, supra,* 600 N.E.2d at 1341. Overwhelming evidence of guilt, like the judicial-temperance presumption, lessens the probability that the inadmissible evidence had a prejudicial impact upon the trier of fact. *Id.* Here, however, there is no overwhelming evidence of guilt.

█ Without the depraved sexual instinct evidence, the only evidence regarding Shanks' guilt was J.S.'s uncorroborated allegation. We agree that in the abstract such

evidence would be sufficient to uphold a conviction. However, where a *Lannan* error has occurred, we are required to find "overwhelming" evidence of guilt. The uncorroborated word of the victim does not meet this standard. *Vanover v. State,* (1993) 2d Dist. Ind.App., 605 N.E.2d 218, 220. *Accord Pirnat v. State* (1993) 5th Dist. Ind.App., 612 N.E.2d 153, *on remand; Sink v. State,* (1993) 3d Dist. Ind.App., 605 N.E.2d 270, 271 *trans. denied.*[14]

The judgment is reversed and the cause is remanded for further proceedings consistent herewith.

SHARPNACK, C.J., concurs.

FRIEDLANDER, J., dissents with opinion.

FRIEDLANDER, Judge, dissenting.

I respectfully dissent. The majority's decision detours by presuming reversible error when a trial judge acts as a trier of fact while allowing a harmless error analysis when a jury hears prejudicial evidence.

While I agree that the evidence of Shanks's prior acts is inadmissible under *Lannan v. State* (1992), Ind., 600 N.E.2d 1334, the admission of such evidence does not necessarily require the reversal of his convictions. As the court in *Lannan* concluded: "In determining whether the introduction of this evidence warrants reversal, we must assess the probable impact of the evidence *upon the jury." Lannan, supra* at 1341 (emphasis supplied).

12. *But see Pinkston, supra,* 436 N.E.2d at 308 (erroneous admission of prior bad acts would not require reversal). *"Even if the evidence had been improperly admitted,* in actions tried to the court, it is presumed the judge disregarded inadmissible testimony...." *Id.* (emphasis supplied). Although not discussed in the opinion, it is evident that the trial judge in *Pinkston* overruled a defendant's objection. The words "improperly admitted" necessarily implies that the judge has ruled upon an objection. Where a party fails to object, a judge has not "admitted" evidence, it simply is admitted. In *Pinkston,* our Supreme Court applied the judicial-temperance presumption without discussing whether the objection was specific or general. However, in *Pinkston,* the admission of the contested evidence was not erroneous, and

we will not read the court's dicta as overruling *Fletcher.*

13. We agree that Judge Friedlander's position comports with *United States v. Menk* (1968) 7th Cir., 406 F.2d 124, *cert. denied.* In *Menk,* the court applied the presumption even though the judge had erroneously overruled the defendant's objection. 406 F.2d at 126. However, we are bound by *Fletcher, supra.*

14. In *Lannan* and *Martin v. State* (1993) Ind., 622 N.E.2d 185, our Supreme Court found overwhelming evidence where the admissible evidence included an eyewitness account of the molestation. *Id.* Here, we simply do not have that compelling type of evidence.

Because Shanks was convicted after a bench trial, no jury was affected by the inadmissible evidence. As was observed in *Roop v. State* (1991), Ind.App., 571 N.E.2d 568, *trans. denied:* "Generally, harm from evidentiary error is lessened if not completely annulled when the trial is by the court sitting without a jury." *Id.* at 570. The rationale for the general rule was explained in *King v. State* (1973), 155 Ind.App. 361, 292 N.E.2d 843:

"What might very well constitute prejudicial error in the form of testimony given before a jury does not necessarily constitute prejudicial error in a trial to the court. It must be remembered that a trial judge is presumed to know the intricacies and refinements of the rules of evidence and that he sifts the evidence and weighs it in the light of his legal experience and expertise. He is thus able to separate the wheat from the chaff, ignoring the extraneous, the incompetent and the irrelevant and it is only when his judgment has apparently or obviously been infected by erroneously admitted evidence that we will set it aside."

*Id.* at 366–67, 292 N.E.2d at 846–47.

In *Lannan*, Chief Justice Shepard examined the depraved sexual instinct exception to the general exclusionary rule, and observed that such evidence was highly probative. *Lannan, supra,* at 1336–37. He went on to analyze the general rule: "This exclusionary rule renders inadmissible character evidence offered solely to show the accused's propensity to commit the crime with which he was charged. *The rationale behind this general rule,* sometimes termed 'the propensity rule,' *is that the prejudicial effect of such evidence outweighs any probative value.*" *Id.* at 1337 (emphasis supplied).

Thus, propensity evidence is not disfavored because it has no probative value, but rather is excluded because of its tendency to prejudice the jury. As the supreme court explained in *Hardin v. State* (1993), Ind., 611 N.E.2d 123, 127, such evidence is prejudicial because it tempts the jury to convict the defendant solely because of his bad character. In *Hardin,* our supreme court observed:

"The notion that the State may not punish a person for his character is one of the foundations of our system of jurisprudence. Evidence of misconduct other than that with which one is charged ('uncharged misconduct') will naturally give rise to the inference that the defendant is of bad character. This, in turn, poses the danger that the jury will convict the defendant solely on this inference."

*Id.* at 127, *quoting Penley v. State* (1987), Ind., 506 N.E.2d 806, 808.

A trial judge, however, is not similarly tempted by such evidence. It is common for a trial judge to be exposed to information about a defendant that would be extremely prejudicial in the eyes of a jury. *See Lasley v. State* (1987), Ind., 510 N.E.2d 1340 (fact that trial judge presided over defendant's previous child molesting trial did not establish the existence of bias or prejudice).

Nothing in the record suggests that the trial judge convicted Shanks because of his bad character. The victim's testimony was unequivocal and sufficient to sustain Shanks's conviction. As was noted in *King, supra,* a trial judge is able to ignore extraneous, incompetent and irrelevant evidence. Further, if a defendant's appearance before a certain trial judge in prior actions does not establish prejudice, *Lasley, supra; Brim v. State* (1984), Ind., 471 N.E.2d 672, we should conclude that the trial court's awareness of Shanks's other molestations prejudiced the trial judge against him. This conclusion is also consistent with the treatment of evidence of extraneous offenses admitted during the federal bench trials. *See United States v. Impson* (5th Cir., 1977), 562 F.2d 970; *United States v. Menk* (7th Cir., 1968), 406 F.2d 124.

The trial judge's consideration of Shanks's prior actions should not automatically require reversal, as the majority seems to suggest. Our supreme court has explicitly held that the admission of evidence of a defendant's depraved sexual instinct does not constitute fundamental error. *Ried v. State* (1993), Ind., 615 N.E.2d 893. It is therefore not evidence which would deprive a defendant of a fair trial. As the supreme court in *Lannan*

specifically determined that depraved sexual instinct evidence is highly probative, and as it is extremely unlikely that the trial judge was tempted to convict Shanks because of his bad character, I do not believe reversal is necessitated under *Lannan*.

Since depraved sexual instinct evidence is highly probative, such evidence has "wheat", to borrow the metaphor used in *King*. As a trial judge is trained to ignore the temptation to convict a defendant because of his bad character, the "chaff", we should conclude the admission of Shanks's prior acts here does not require reversal, just as the supreme court concluded in *Lannan*.

I agree with the modification of Shanks's sentence, but I vote to affirm his convictions.