## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 27 2017, 8:55 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John T. Wilson
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jose Luis Aguilar-Robles, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | July 27, 2017 <br><br> Court of Appeals Case No. 48A04-1608-CR-1875 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable Thomas Newman Jr., Judge <br><br> Trial Court Cause No. 48C03-1412-FA-2085 |

**Pyle, Judge.**

## Statement of the Case

[1] Jose Luis Aguilar-Robles ("Aguilar-Robles") appeals his sentences imposed, following a bench trial, for his convictions of five counts of Class A felony child

molesting[1] and three counts of Class B felony incest.[2]  Aguilar-Robles argues that:  (1) the trial court abused its discretion when considering the threat to his daughter and his lack of remorse as aggravating circumstances; and (2) his aggregate 120-year sentence is inappropriate and should be revised to an aggregate thirty-year sentence.

[2]  In regard to aggravating circumstances, we conclude that the trial court's reference to a threat to the victim, which was done when discussing the nature and circumstances of the crime and Aguilar-Robles's violation of his position of trust with his daughter, was not an abuse of discretion.  As for the lack of remorse aggravator, the State concedes, and we agree, that the trial court improperly considered Aguilar-Robles's lack of remorse to be an aggravating circumstance where he maintained his innocence.  Nevertheless, we need not remand for resentencing because the trial court found other valid aggravating circumstances, and we can say with confidence that the trial court would have imposed the same sentence without the lack of remorse aggravating circumstance.  Additionally, we conclude that Aguilar-Robles's aggregate sentence is not inappropriate, and we affirm his aggregate sentence.  Finally, we note that there is a double jeopardy concern with Aguilar-Robles's child molesting convictions in Counts I-III and his incest convictions in Counts VI-

---

[1] IND. CODE § 35-42-4-3(a)(1).  We note that under the current version of the child molesting statute, which took effect in 2014 and was then amended in 2015, Class A felony child molesting is now a Level 1 felony. Because Aguilar-Robles committed his offenses in 2010, we will apply the statute in effect at that time.

[2] I.C. § 35-46-1-3.  The incest statute was also amended in 2014, and Class B felony incest is now a Level 4 felony.

VIII.  Because the State relied on the same evidence of sexual intercourse to support Aguilar-Robles's child molesting convictions in Counts I-III and his convictions of incest in Counts VI-VIII and entered judgments of conviction and sentences on all these convictions, we remand to the trial court with instructions to vacate Aguilar-Robles's incest convictions.

[3]     We affirm and remand.

## Issues

1.  Whether the trial court abused its discretion when sentencing Aguilar-Robles.

2.  Whether Aguilar-Robles's sentence is inappropriate pursuant to Indiana Appellate Rule 7(B).

## Facts

[4]     During Summer 2010, on three separate occasions, twenty-six-year-old Aguilar-Robles engaged in sexual intercourse with his seven-year-old daughter, E.R. The first time he did so, Aguilar-Robles's wife and E.R.'s mother, Sarah Robles ("Mother"), was out of town, and Aguilar-Robles was watching E.R. and her two brothers.  E.R. and her brothers were sleeping in Aguilar-Robles's bedroom when she had a nightmare and went to the kitchen to tell her father.  Aguilar-Robles, who was drinking beer, told her to return to bed and that he would check on her in a moment.  When Aguilar-Robles went to the bedroom to see E.R., he removed her underwear and clothing below the waist, got on top of her, kissed her on her mouth with his tongue, and inserted his penis into her vagina, causing E.R. "[a] lot of pain."  (Tr. 55).  When she told him to stop, he

asked "why" and did not stop. (Tr. 55). Aguilar-Robles also touched the inside of E.R.'s vagina with his finger. E.R. did not tell anyone what had happened to her because she "was scared." (Tr. 56).

[5] The second time that Aguilar-Robles molested E.R. was during a morning before school when Mother was at work. Aguilar-Robles, who had E.R. on the bathroom floor, got on top of her, put his penis inside her vagina, and kissed her on her mouth. Again, she told him to stop, and he did not. Aguilar-Robles told E.R. not to "tell your mom or else both of us will get in trouble[.]" (Tr. 61). E.R. was "scared" and did not tell anyone what he had done because she thought "he might hurt [her] or [her] family." (Tr. 60).

[6] The third molestation also happened at Aguilar-Robles's house in the morning before school while Mother was at work. Aguilar-Robles went into E.R.'s bedroom, and, as she was on her bed, he kissed her on the mouth and "stuck" his penis in her vagina, causing her pain. (Tr. 61). That same day after E.R. returned from school, Aguilar-Robles gave her an "air soft gun" and instructed her not to show it to anyone, including Mother and her brothers. (Tr. 63).

[7] E.R. did not initially tell anyone that Aguilar-Robles had molested her. Eventually in November 2014, after several years of being "sick of it" and having it "playing over and over in [her] mind[,]" E.R. revealed to Mother what Aguilar-Robles had done to her. (Tr. 65). Aguilar-Robles was in the room when E.R. told her mother, and he "started throwing up in the kitchen sink." (Tr. 46). Mother then took E.R. to the police department to report the

incidents. E.R. was also interviewed by a forensic interviewer and examined by a sexual assault nurse.

[8] That same day, a uniformed police officer went to Aguilar-Robles's house "to do a stand by" to ensure that Mother and the three children could safely leave the house with their belongings. (Tr. 171). As the officer walked up to the house, Aguilar-Robles, who was crying, walked out and "raised his arms up . . . in a handcuffing position, and said I'm sorry[,] I'm sorry[,] I'm sorry." (Tr. 173). The officer informed Aguilar-Robles that he was at the house only so that Mother could safely leave and told Aguilar-Robles to go back inside the house.

[9] Thereafter, in December 2014, the State charged Aguilar-Robles with: Counts I through V, Class A felony child molesting,[3] and Counts VI through VIII, Class B felony incest. The police were not initially able to arrest Aguilar-Robles because he had left town and no longer showed up for work. About five months later, in May 2015, the police located Aguilar-Robles and arrested him.

[10] In July 2016, the trial court held a bench trial. E.R. testified to the facts as stated above. Aguilar-Robles testified on his own behalf. He denied that he had sexual intercourse with E.R. or had otherwise molested her. During closing argument, the State argued that the evidence of Aguilar-Robles's three acts of sexual intercourse supported his child molesting charges in Counts I-III

---

[3] As for the five counts of Class A felony child molesting, Counts I, II, and III alleged that Aguilar-Robles had engaged in sexual intercourse with E.R., and Counts IV and V alleged that Aguilar-Robles had performed deviate sexual conduct on E.R.

and his incest charges in Counts VI-VIII. The trial court found Aguilar-Robles guilty as charged and entered judgments of convictions on all eight counts.

[11] At the beginning of the sentencing hearing, Aguilar-Robles stated that he was still maintaining his innocence. The State acknowledged that Aguilar-Robles had the right to maintain his innocence; nevertheless, it requested that the trial court find that his lack of remorse was an aggravating circumstance. The State argued that other aggravating factors included Aguilar-Robles's position of trust with E.R., E.R.'s young age, and Aguilar-Robles's criminal history, which the State acknowledged was not extensive. The State requested that the trial court order Counts I, II, and III to be served consecutively because Aguilar-Robles had molested E.R. on three separate occasions. Aguilar-Robles's counsel "agree[d] with the State's assessment of which counts can be consecutive versus concurrent" and "concur[red] that [Counts] I, II, and III are the only consecutive counts as a possibility." (Tr. 236, 237). Aguilar-Robles's counsel argued that the trial court should not find his lack of remorse to be an aggravating factor, given the fact that he continued to maintain his innocence. His counsel stated that Aguilar-Robles would "without question . . . concur" that he was in a position of trust and was "in fact the primary care giver." (Tr. 237).

[12] When sentencing Aguilar-Robles, the trial court discussed the lack of mitigating circumstances and the presence of aggravating circumstances as it enhanced Aguilar-Robles's sentences and imposed consecutive sentences for three of the convictions. The trial court stated as follows:

> The Court does not find any mitigating circumstances. The aggravating circumstance[] that it does find is . . . the fact that he was a primary care giver and the evidence would show as such he took advantage of that situation being the primary care giver and that he was also in a trust position. He violated that trust position through being the primary care giver which gave credence and more substance to the fact that he threatened her. I think if he were not the primary care giver and he were not in such [a] trust position that the threats made would not be as significant but I think the threats are enhanced by the fact of his position. I don't think he's shown any remorse and his prior criminal history also is an aggravating circumstance. Counts I, II, and III to run consecutive and the other counts are either concurrent or merged. The aggravating circumstances cause the presumptive sentence of thirty (30) years to be enhanced by ten (10) to be forty (40) years all consecutive for a sentence of one hundred twenty (120) years to the Department of Corrections.

(Tr. 239-40). When the trial court issued its written sentencing order, it specified that it had entered judgments of conviction and was imposing a term of forty (40) years for each of Aguilar-Robles's five Class A felony convictions in Counts I-V and the maximum term of twenty (20) years for each of his Class B felony convictions in Counts VI-VIII. The trial court ordered Aguilar-Robles to serve Counts I-III consecutively and the remaining counts concurrently. Aguilar-Robles now appeals.[4]

---

[4] After Aguilar-Robles filed his notice of appeal, he filed a motion for relief from judgment with the trial court, which held a hearing on the motion and denied it. Aguilar-Robles then filed a motion to stay his appeal to obtain the transcript of that hearing, and our Court granted his motion to stay and retained jurisdiction. Thereafter, Aguilar-Robles filed his Appellant's Brief, and this appeal continued. Aguilar-Robles does not raise an appellate issue relating to the denial of his motion for relief from judgment.

# Decision

[13] On appeal, Aguilar-Robles contends that: (1) the trial court abused its discretion when determining aggravating circumstances; and (2) his sentence is inappropriate. We will review each argument in turn.

[14] Before we address Aguilar-Robles's arguments, we note that some of his convictions raise a double jeopardy concern. During the bench trial, the State relied upon the evidence of Aguilar-Robles's three acts of sexual intercourse with E.R. to support the child molesting convictions in Counts I-III and the incest convictions in Counts VI-VIII. Following the bench trial, the trial court entered judgment of conviction on all counts. At sentencing, the trial court stated that some of the convictions would be merged. The trial court, however, entered a sentence on each of the incest convictions and ordered that they be served concurrently with the child molesting convictions in Counts I-III.

[15] "A double jeopardy occurs when judgments of conviction are entered and cannot be remedied by the 'practical effect' of concurrent sentences or by merger after conviction has been entered." *Gregory v. State*, 885 N.E.2d 697, 703 (Ind. Ct. App. 2008) (quoting *Morrison v. State*, 824 N.E.2d 734, 741-42 (Ind. Ct. App. 2005), *trans. denied*), *trans. denied.* Because the three child molesting convictions in Counts I-III and the three incest convictions in Counts VI-VIII arise from the same three acts of sexual intercourse, and the trial court entered judgments of conviction and sentences on all counts, a double jeopardy violation occurred under Indiana's double jeopardy clause. *See, e.g., Schaefer v.*

*State*, 750 N.E.2d 787, 795 (Ind. Ct. App. 2001) (convictions for both child molesting and incest violated double jeopardy because it was "extremely likely" that the jury used the same evidentiary facts to establish the essential elements of both offenses); *Roberts v. State*, 712 N.E.2d 23, 31 (Ind. Ct. App. 1999) (holding that convictions for rape and child molesting that were based on one act of sexual intercourse violated prohibitions against double jeopardy), *trans. denied*. Accordingly, we remand to the trial court to vacate the three incest convictions in Counts VI-VIII. *See Richardson v. State,* 717 N.E.2d 32, 55 (Ind. 1999) (when two convictions cannot stand because of a double jeopardy violation, the conviction with the less severe penal consequences should be vacated).

## 1. Abuse of Discretion

[16] Aguilar-Robles suggests that the trial court abused its discretion by finding the two following aggravating circumstances: (1) Aguilar-Robles threatened his daughter; and (2) he showed no remorse.

[17] Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d 218 (Ind. 2007). So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* An abuse of discretion will be found where the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* A trial court may abuse its discretion in

a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id.* at 490–91.

[18] Aguilar-Robles argues that the trial court's finding that he threatened his daughter was an improper aggravating circumstance because it was "not supported by the record." (Aguilar-Robles's Br. 9). We disagree. During the bench trial, E.R. testified that when Aguilar-Robles was having sex with her, she told him to stop, but he refused. Aguilar-Robles then told E.R. not to "tell your mom or else both of us will get in trouble[.]" (Tr. 61). E.R. was "scared" and did not tell anyone what he did because she thought "he might hurt [her] or [her] family." (Tr. 60). At sentencing, the trial court discussed the fact that Aguilar-Robles had threatened E.R. when it discussed the undisputed position of trust aggravating circumstance and in reference to the nature and circumstances of the crimes. "'Generally, the nature and circumstances of a crime is a proper aggravating circumstance. Even if the trial court relied on an improper factor under this aggravating circumstance, the sentence may be upheld so long as [t]he remaining components of that aggravator were proper.'" *Gomillia v. State*, 13 N.E.3d 846, 853 (Ind. 2014) (quoting *McCann v. State*, 749 N.E.2d 1116, 1120 (Ind. 2001) (alteration in original) (internal citation and quotations omitted)). Because the trial court's consideration of Aguilar-

Robles's threat was part of its discussion of the nature and circumstances of the case and the violation of his position of trust, which are unchallenged aggravating circumstances, it did not abuse its discretion when sentencing him.

[19]     Aguilar-Robles also argues the trial court's consideration of lack of remorse as an aggravating circumstance was improper because he had clearly maintained his innocence. "A trial court may consider as an aggravator the defendant's lack of remorse[,]" which is exhibited "'when he displays disdain or recalcitrance, the equivalent of 'I don't care.'" *Sloan v. State*, 16 N.E.3d 1018, 1027 (Ind. Ct. App. 2014) (quoting *Cox v. State*, 780 N.E.2d 1150, 1158 (Ind. Ct. App. 2002)). However, a trial court may not consider lack of remorse as an aggravator for a defendant "consistently maintaining his innocence if the defendant does so in good faith." *Id.*

[20]     The State acknowledges that the trial court's use of the lack of remorse aggravating circumstance was improper "[u]nder the circumstances presented here," but it contends that any such impropriety would not require this Court to remand for resentencing given the trial court's finding of other valid aggravating circumstances. (State's Br. 12). We agree. If a trial court abuses its discretion by improperly considering an aggravating circumstance, we need to remand for resentencing only "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Anglemyer*, 868 N.E.2d at 491. Here, where the trial court's imposition of enhanced and consecutive sentences for the three child molesting convictions in Counts I-III was based on the undisputed position of

trust aggravating circumstance and its consideration of the nature and circumstances of the crimes, we are confident that the trial court would have imposed the same sentence even without the lack of remorse aggravator. Accordingly, we conclude that the trial court did not abuse its discretion when sentencing Aguilar-Robles.[5] *See Gleason v. State*, 965 N.E.2d 702, 712 (Ind. Ct. App. 2012) (explaining that a single aggravating circumstance may be used to enhance a sentence and support the imposition of consecutive sentences).

## 2. Inappropriate Sentence

[21] Aguilar-Robles argues that his aggregate 120-year sentence for his five Class A felony child molesting convictions was inappropriate. Specifically, he contends that enhanced, consecutive sentences were inappropriate because his multiple acts of molestation occurred with the same victim. He requests that we revise his Class A felony convictions from forty (40) years to the advisory term of thirty (30) years and order them to be served concurrently, resulting in an aggregate sentence of thirty (30) years.[6]

---

[5] Aguilar-Robles also briefly suggests that the trial court's imposition of consecutive sentences was improper. Here, the record reveals that Aguilar-Robles had sexual intercourse with his seven-year-old daughter on three separate days. Also, Aguilar-Robles acknowledges that the trial court "identified several aggravating circumstances[.]" (Aguilar-Robles's Br. 8). Furthermore, he acknowledged at sentencing that Counts I-III could be served consecutively. Thus, Aguilar-Robles's suggestion that the trial court abused its discretion by imposing consecutive sentences is without merit. *See, e.g.*, *Powell v. State*, 895 N.E.2d 1259, 1263 (Ind. Ct. App. 2008) (affirming the imposition of consecutive sentences for multiple acts of child molesting with the same victim and explaining that "[t]he basis for the gross impact that consecutive sentences may have is the moral principle that each separate and distinct criminal act deserves a separately experienced punishment"), *trans denied.*

[6] Aguilar-Robles also asks us to revise his three Class B felony incest convictions to the advisory term of ten (10) years. Because these convictions will be vacated upon remand, we will not review these sentences.

[22] We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). The defendant has the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). The principal role of a Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "Appellate Rule 7(B) analysis is not to determine whether another sentence is more appropriate but rather whether the sentence imposed is inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012) (internal quotation marks and citation omitted), *reh'g denied*. Whether a sentence is inappropriate ultimately turns on "the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224.

[23] When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Childress*, 848 N.E.2d at 1081. Here, the trial court convicted Aguilar-Robles of five counts of Class A felony child molesting. A Class A felony has a range of twenty (20) to fifty (50) years with an advisory sentence of thirty (30) years. I.C. § 35-50-2-4. The trial court imposed a term of forty (40) years for each of Aguilar-Robles's five Class A felony convictions in Counts I-V and ordered him to serve Counts I-III

consecutively and the remaining counts concurrently. Thus, the trial court imposed an aggregate 120-year sentence.

[24] The nature of Aguilar-Robles's offenses involved him having sex with his seven-year-old daughter on three separate occasions and engaging in deviant sexual conduct with her. Aguilar-Robles, who was admittedly the "primary care giver" of his young daughter, (Tr. 237), concedes that he "clearly violated a position of trust." (Aguilar-Robles's Br. 9). We have explained that "[t]here is no greater position of trust than that of a parent to his own young child" and that "[a]busing a position of trust is, by itself, a valid aggravator which supports the maximum enhancement of a sentence for child molesting." *Hart v. State*, 829 N.E.2d 541, 544 (Ind. Ct. App. 2005).

[25] Nevertheless, Aguilar-Robles attempts to minimize the nature of his offenses by arguing that the molestations occurred on only "three occasions in a relatively short period of time" with the same victim. (Aguilar-Robles's Br. 9). He also argues that there was no evidence of force or injury to E.R. and that he stopped on his own accord. He suggests that the imposition of consecutive sentences for Counts I-III was inappropriate and cites cases where our supreme court revised consecutive sentences to concurrent sentences where the sentences for child molesting convictions involved the same victim.

[26] We recognize that our supreme court has explained that "[w]hether the counts involve one or multiple victims is highly relevant to the decision to impose consecutive sentences." *Cardwell*, 895 N.E.2d at 1225. However, our supreme

court has also explained that "additional criminal activity directed to the same victim should not be free of consequences." *Id.* Indeed, "appellate review should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count. *Id.* at 1225.

[27] Here, Aguilar-Robles was convicted for five counts of Class A felony child molesting and sentenced to an aggregate term of 120 years. His acts of child molestation were all the more heinous given that he perpetrated these acts against his own, very young, daughter. E.R.'s trial testimony reveals that she experienced "[a] lot of pain" when her father inserted his penis inside the seven-year-old's vagina. (Tr. 55). When Aguilar-Robles was having sexual intercourse with E.R., she told him to stop, but he refused and warned her not to tell her mother. E.R. was "scared" of her father and did not initially tell anyone what he had done because she thought "he might hurt [her] or [her] family." (Tr. 60). After E.R. had experienced several years of Aguilar-Robles's forced sexual acts "playing over and over in [her] mind[,]" and of being "sick of it[,]" she eventually revealed Aguilar-Robles's crimes to Mother. (Tr. 65). She testified that the repeated thoughts of the molestations made it difficult for her at school and made her feel "[s]ad." (Tr. 65).

[28] Turning to Aguilar-Robles's character, we note that his violation of his position of trust with his seven-year-old daughter reflects very poorly on his character. We acknowledge that Aguilar-Robles had been employed and had a limited criminal history, which included using a fake ID, but no prior felony

convictions. At sentencing, Aguilar-Robles admitted that he also had a theft charge from Illinois and a public intoxication charge from Marion County, both of which he "forgot" to tell the probation department when he was interviewed for his presentence investigation report. (Tr. 233). We note that Aguilar-Robles maintained his innocence. At the same time, we also recognize that the record reveals that after E.R. exposed Aguilar-Robles's multiple acts of molestation against her, Aguilar-Robles's actions were not indicative of an outright proclamation of innocence. When E.R. told Mother, in Aguilar-Robles's presence, that her father had molested her, Aguilar-Robles vomited in the sink. That same day, when a police officer went to his house, the crying Aguilar-Robles walked up to the officer, "raised his arms up . . . in a handcuffing position, and said I'm sorry[,] I'm sorry[,] I'm sorry." (Tr. 173). Thereafter, Aguilar-Robles left town and no longer showed up for work for a few months until the police were able to locate and arrest him.

[29] Here, the trial court did *not* impose the maximum sentence for Aguilar-Robles's five Class A felony convictions. Instead, it enhanced each conviction by ten years above the advisory term and ordered that the three convictions that were for Aguilar-Robles's three separate acts of forcing his seven-year-old daughter to have sexual intercourse were to be served consecutively while the other two convictions relating to deviate sexual conduct were to be served concurrently. Aguilar-Robles has not persuaded us that his 120-year aggregate sentence for his five Class A felony child molesting convictions is inappropriate, and we reject his argument that a thirty (30) year sentence was more appropriate.

Therefore, we affirm the trial court's sentence. *See Conley*, 972 N.E.2d at 876 (explaining that appellate courts do not look to determine if the sentence was appropriate; instead, we look to make sure the sentence was not inappropriate).

[30]     Affirmed and remanded.

May, J., and Brown, J., concur.